IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Chantee Bond,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Andrew Saul, Commissioner<br>of Social Security,<br><br>　　　　Defendant. | Civil Action No. 0:18-2674-RMG<br><br>**ORDER** |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Commissioner moved to have the agency decision reversed and remanded for further administrative processing. (Dkt. No. 11). Thereafter, the Magistrate Judge issued a Report and Recommendation ("R & R") on August 2, 2019, recommending that this matter be reversed and remanded for further administrative proceedings to address issues raised by the recent decision of *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019). No party filed objections to the R & R.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de*

*novo* determination of those portions of the R & R to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *See Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the claimant is engaged in substantial gainful work. If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has a "severe medically determinable physical or mental

impairment." If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment satisfies one of the designated list of impairments that would automatically render the claimant disabled. Where a claimant does not satisfy one of the listed disabling impairments, the Commissioner must proceed to Step Four, which involves a determination of the claimant's RFC. Once the RFC is determined, the Commissioner proceeds to Step Five to determine if jobs exist in significant numbers in the national economy that the claimant can perform in light of her RFC. 20 C.F.R. § 404.1520(a)(4). The claimant carries the burden of establishing the requirements of Steps One through Step Four, but at Step Five the burden shifts to the Commissioner. If the Commissioner fails to carry her burden at Step Five, the claimant is entitled to a finding of disability as a matter of law. *See Pearson v. Colvin*, 810 F.3d 204, 209-10 (4th Cir. 2015).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of all medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). This includes the duty to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Under what is commonly referred to as the Treating Physician Rule, the Commissioner is required to give special consideration to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight.

Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Further, all medical opinions must be weighed under the standards of the Treating Physician Rule, including the opinions of non-treating and non-examining physicians. 20 C.F.R. § 404.1527(c), (e)(1)(ii).

In recent years, an issue has arisen concerning whether a claimant's RFC limited to "simple instructions" is consistent with jobs that have a Reasoning Level of 2. Under the Dictionary of Occupational Titles, a position with a Reasoning Level of 2 requires the ability to "apply commonsense understanding to carry out <u>detailed</u> but uninvolved written or oral instructions." Dictionary of Occupational Titles, Appendix C, 1991 WL 688702 (emphasis added). A position with a Reasoning Level 1 requires the ability to "apply commonsense understanding to carry out <u>simple</u> one- or two-step instructions." *Id.* (emphasis added). This issue was addressed in *Thomas v. Berryhill*, 916 F.3d 307, 313-14 (4th Cir. 2019), which found that a RFC limited to "short, simple instructions" was in "apparent conflict" with a Reasoning Level 2 position. The Fourth Circuit concluded that since there might be circumstances where "short, simple instructions" might still fall with a Reasoning Level 2 position, it was unwilling to create a "categorical rule" that all such limitations required only Reasoning Level 1 positions.

Instead, the Fourth Circuit required under the facts of *Thomas* that the decision be reversed and remanded to the agency to address this "apparent conflict." *Id.* at 314.

## Discussion

Plaintiff's application for disability benefits has a protracted history. Plaintiff first filed for benefits on September 29, 2009. This Court reversed the Commissioner's first decision in this matter on February 14, 2014 and remanded the case for further administrative action. (Dkt. No. 9-2). Plaintiff then experienced four more years of delay before then matter returned to the District Court on an appeal from a second denial of disability benefits. In total, this application is now approaching a decade of administrative and judicial processing. The Commissioner now requests still another remand for further administrative processing.

The Magistrate Judge is certainly correct that there is an apparent conflict in the testimony of the Vocational Expert and the DOT. The Vocational Expert identified three different jobs which Plaintiff was reportedly qualified to perform notwithstanding her severe impairments of schizophrenia and depression. Each of these positions has a Reasoning Level of 2. In this case, the Plaintiff's RFC was even more restrictive than in *Thomas*, limiting Plaintiff to "work requiring only understanding, remembering, and carrying out simple instructions." Tr. 524. Thus, according to the Plaintiff's RFC, she is limited to performing only jobs with "simple instructions" that she can (a) understand; (b) remember; and (c) carry out.

At Step Five of the sequential process, the Commissioner carries the burden of establishing that there are sufficient jobs in the national marketplace in which Plaintiff is able to perform in light of her RFC. In other words, is the Plaintiff, with her documented mental impairments, capable of performing jobs at Reasoning Level 2, which require the capacity to

-5-

follow "detailed but uninvolved written or oral instructions?" If there is not substantial evidence in the record to support a finding that Plaintiff is capable of following detailed instructions, the Commissioner would not be able to carry his burden at Step Five, and Plaintiff would be entitled to a finding of disability as a matter of law.

This issue is complicated by the fact that the Administrative Law Judge ("ALJ") rejected the opinions of Plaintiff's two treating psychiatrists (Dr. Kellie Bishop and Dr. Richard Ford) and one consulting psychologist (Dr. Scott Shaffer), contending that their opinions that Plaintiff's significant mental impairments made her incapable of sustaining full time work were inconsistent with their treatment records. Tr. 529-531. A review of the records of these treating and consulting physicians indicates, however, that their opinions are well supported by their treatment records and the ALJ's finding to the contrary is not supported by substantial evidence.

Dr. Bishop, a psychiatrist, treated Plaintiff for several years. Dr. Bishop opined that Plaintiff's cognitive difficulties and mental illness would make it difficult for her to sustain employment. The ALJ gave "limited weight" to Dr. Bishop's opinions because they were allegedly inconsistent with her treatment notes indicating only moderate problems and improvement with treatment. Tr. 530. A review of Dr. Bishop's notes reveals a consistent concern with delusional thinking, paranoia, cognitive dysfunction, disorganized thoughts, and difficulty with focusing that are fully consistent with her opinions about Plaintiff's likely difficulty in functioning successfully in the workplace. Tr. 389, 390, 394, 417, 418, 419, 420. While there are entries in the treatment records indicating that Plaintiff's treatment at times had some beneficial effect, there is no indication that these serious problems of cognitive dysfunction were in any way resolved. A finding by the ALJ that Dr. Bishop's opinions are inconsistent with

her treatment notes is not supported by substantial evidence.[1]

The ALJ similarly gave little weight to the opinions of another treating psychiatrist, Dr. Ford, that Plaintiff would have trouble sustaining work. This was because Dr. Ford indicated in his treatment notes that Plaintiff received benefit from her medications. Tr. 530. Dr. Ford's treatment notes detailed Plaintiff's routine auditory hallucinations, delusional thinking, and paranoia. These chronic symptoms of mental illness were never resolved during Dr. Ford's treatment of the claimant. Tr. 1305-06, 1397, 1400. The fact that Plaintiff realized some limited improvement in her symptoms is not inconsistent with Dr. Ford's conclusion that the Plaintiff's chronic mental illness made it difficult for her to sustain full time employment. The finding by the ALJ that Dr. Ford's opinions are inconsistent with his medical record is not supported by substantial evidence.[2]

Further, the ALJ gave little weight to the opinions of a consulting psychiatrist, Dr. Shaffer, that Plaintiff had marked limitations in her ability to function in the workplace. The ALJ rejected Dr. Shaffer's opinion based on the assumption that the psychologist must have been relying on the Plaintiff's own reports of vocational difficulties in reaching his opinions. The ALJ

---

[1] A psychiatric consultation by another psychiatrist, Dr. Mary Hill, during an admission to Beaufort Hospital in this same time period documented that Plaintiff's symptoms were "consistent with a psychotic disorder" and included "eccentric behavior, unusual laughing, inappropriate answers to questions." Tr. 486. Dr. Hill's findings and conclusions are consistent with the opinions offered by Plaintiff's treating physicians.

[2] The ALJ also misquotes and mischaracterizes a statement made by Dr. Ford in an opinion letter of December 1, 2014. The ALJ contends that Dr. Ford stated that Plaintiff's employment problems were due to "'odd thinking and confrontational stands' rather than just her paranoid thoughts." Tr. 530-31. Instead, Dr. Ford stated that Plaintiff's employment difficulty "appears to be due to odd thinking and confrontational stances that Chantee takes, as a result of paranoid thought." Tr. 1305 (emphasis added).

went on to state that "treatment notes indicate that claimant's work related difficulties may have been due to her inability to perform up to standards and not to her inability to get along with others." Tr. 530. In fact, Dr. Shaffer performed a comprehensive mental status examination and completed a Social Security form with detailed comments and explanations. Tr. 465-71. He concluded that Plaintiff had "marked" limitations in the ability to make judgments on complex work related decisions and would likely be unable to carry out complex instructions. Tr. 469. The suggestion by the ALJ that Dr. Shaffer was somehow duped by Plaintiff into believing she had significant mental impairments when she really did not seems to fall into the category of rank speculation and does not constitute a "good reason" to reject Dr. Shaffer's opinions.

The ALJ also reviewed the opinions of another consulting psychologist, Dr. Spivey, and gave "significant weight" to his opinions, despite the fact that many of those opinions were largely consistent with the opinions of Drs. Bishop, Ford and Shaffer. Tr. 531. Indeed, a review of Dr. Spivey's consultant's report details "attention/concentration problems," "auditory hallucinations in which she hears voices," "paranoid delusions," "cognitive difficulties," "impairment in her short-term auditory memory functioning," and poor "insight and judgment" based upon psychosis. Tr. 1337-38. He also observed that Plaintiff "may display difficulty understanding complex instructions and performing complex tasks in the workplace." Tr. 1339. Dr. Spivey rated Plaintiff with a GAF score of 50 at the time of her assessment and over the prior twelve months. Tr. 1338. According to the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") a GAF score of 50 indicates "serious impairment in social, occupational or school functioning" (e.g. . . . unable to keep a job)." DSM-IV at 32 (American Psychiatric Association 1994).

The ALJ repeatedly references the fact that the ultimate decision on disability is reserved to the Commissioner, suggesting that opinions by treating physicians that Plaintiff would likely experience trouble sustaining work is not proper opinion evidence. Although the ALJ is correct that the decision regarding whether a claimant is disabled is reserved for the Commissioner, a treating or consulting physician can offer medical opinions concerning whether a claimant's mental illness and impairments would likely affect her ability to sustain work and perform essential job functions. The ALJ cannot simply disregard such opinions as a comment on the ultimate issue.

The administrative record also contains assessments by non-treating and non-examining psychologists who performed in-house reviews for the Social Security Administration based upon their review of the medical chart of Plaintiff. These chart reviewers are accorded the least weight under the Treating Physician Rule, recognizing the greater value of the opinions of medical professionals who have examined and treated the claimant. Two of these chart reviewers, Dr. Lisa Varner and Dr. Olin Hamrick, conducted their reviews in early- to mid-2010 and did not have access to the full records of the treating and consulting physicians described above. Each of these chart reviewers concluded Plaintiff had no severe impairments, a finding inconsistent with the conclusions of the ALJ that Plaintiff had severe impairments of schizophrenia and depression. Tr. 303-315, 402-14. The ALJ accorded "little weight" to these opinions. Tr. 529.

The record also contains chart reviews performed by Dr. Lisa Clausen in December 2012 and another performed by Dr. Hamrick in 2013. These reviews recognized that due to Plaintiff's mental impairments she had limitations with "understanding and memory," which allowed her to

carry out "very short and simple instructions" but affected her ability to "understand and remember detailed instructions." Tr. 773, 808. The ALJ gave "great weight" to these opinions. Tr. 529.

In sum, the administrative record contains multiple assessments by treating and consulting mental health professionals indicating that Plaintiff suffers from significant cognitive impairments and chronic mental illness, which these providers have concluded significantly impairs the claimant's ability to function in the workplace. These include impairments in ordered thinking, functioning memory, and concentration. These specialist physicians also consistently found that Plaintiff has a limited capacity to handle anything beyond simple instructions. The in-house evaluations by Drs. Hamrick and Clausen similarly found limitations in the ability to remember and understand detailed instructions. The ALJ incorporated these findings into his RFC, limiting Plaintiff to work "requiring only understanding, remembering, and carrying out simple instructions." Based on the full record in this matter, there is not substantial evidence in the record to support a finding that Plaintiff is capable of performing a job that requires her to understand and follow detailed instructions, essential elements of a Reasoning Level 2 position and her RFC. Consequently, the Commissioner would not be able on remand to carry his burden of demonstrating that Plaintiff has the RFC to perform a Reasoning Level 2 position, making a remand for further administrative processing a needless act of futility.

**Remedy**

This Court's general practice is to remand decisions to the Commissioner for further administrative action, but it is well settled that the District Court has the authority to award benefits. 42 U.S.C. § 405(g). An award of benefits by the District Court is appropriate

where the record is fully developed and it is clear the Commissioner would be required to award benefits on remand. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Holohan v. Massanari*, 346 F.3d 1195, 1210 (9th Cir. 2001); *Williams v. Comm'r of Soc. Sec.*, 104 F. Supp. 2d 719, 721 (E.D. Mich. 2000). This is particularly true where there has been a significant lapse of time in the administrative processing of the claim. *Holohan*, 246 F.3d at 1210; *Podedworny v. Harris*, 745 F.2d 210, 223 (3th Cir. 1984). This application for disability benefits was first submitted on September 29, 2009, nearly a decade ago. The time to award Plaintiff the benefits she is entitled has now arrived.

## Conclusion

Based on the foregoing, the Court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the agency with instructions to award benefits from Plaintiff's onset date of September 29, 2009.[3]

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Judge

August 28, 2019
Charleston, South Carolina

---

[3] Multiple health care providers questioned whether Plaintiff had the mental capacity to manage her own funds. This matter should be promptly and appropriately addressed by the agency prior to the award of benefits.